**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

SHAWNELLE ROY,                                          )
                                                       )
       Plaintiff,                              )
                                                       )    No. 24 C 04135
       v.                                      )
                                                       )    Judge Sara L. Ellis
MENARD, INC. d/b/a MENARDS,                             )
                                                       )
       Defendant.                              )

**OPINION AND ORDER**

Plaintiff Shawnelle Roy filed this lawsuit against Defendant Menard, Inc. ("Menards") after a vinyl roll at one of Menards' retail stores fell onto her foot and injured her. She claims that Menards' negligence caused her injury. Menards has now filed a motion for summary judgment [19], and the Court held oral argument on February 24, 2026. Because Menards did not owe Roy a duty to warn or protect, given that the vinyl roll constituted an open and obvious danger and placing such a duty on Menards would be unduly burdensome, Roy cannot establish her negligence claim. The Court grants the motion and enters judgment for Menards.

**BACKGROUND**

**I.      Preliminary Factual Issues**

Menards raises two preliminary issues bearing on the facts of this case, which the Court will address in turn. First, Menards argues that Roy's response improperly includes additional facts not contained in the Joint Statement of Undisputed Material Facts ("SUF") or Roy's Statement of Additional Material Facts ("PSAF"). Menards asks the Court to disregard these facts entirely, arguing that the Northern District of Illinois' Local Rule 56.1(b)(3)(B) "provides the only acceptable means of . . . presenting additional facts." Doc. 27 at 3 (citing *Malec v.*

*Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000)).  But Menards does not identify with specificity the facts to which it objects, instead simply challenging (1) "some of" the testimony listed on pages four and five and (2) other, unspecified facts asserted "throughout [Roy's] argument." Doc. 27 at 3.  It is not the Court's responsibility to individually parse every fact in Roy's response and speculate as to which facts Menards objects, and Menards' failure to sufficiently identify its objections means that it has waived the issue.  *See Levin v. Altisource Sols., Inc.*, 755 F. Supp. 3d 1021, 1032 n.3 (N.D. Ill. 2024) (holding that defendant waived objections to facts asserted in summary judgment briefings because defendant "d[id] not specify which part of the fact statement they challenge" (citations omitted)).  Additionally, Menards ignores that the Court's summary judgment procedures expressly allow a party opposing summary judgment to submit additional disputed facts in the response.  Judge Sara L. Ellis, Case Procedures, Summary Judgment Practice ("[T]he non-moving party may include facts in its response to the motion for summary judgment that it contends are disputed."); *see also Chi. Studio Rental, Inc. v. Ill. Dep't of Com.*, 940 F.3d 971, 982 (7th Cir. 2019) ("We have previously held that Judge Ellis's summary judgment practice does not violate Local Rule 56.1 . . . The nonmoving party may include disputed facts in its response brief, and the moving party may respond to these disputed facts in its reply brief.").

Second, Menards argues that the Court should disregard the affidavit Roy submitted in support of her PSAF.  Menards argues that the affidavit improperly contradicts Roy's deposition testimony but provides no legal authority to support this argument.  The Court therefore finds that Menards has waived the issue.  *See United States v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009) ("[A]rguments unsupported by pertinent authority are waived.").  Even if Menards had not waived the issue, however, the Court would not disregard the affidavit.

2

In the Seventh Circuit, "the sham-affidavit rule prohibits a party from submitting an affidavit that contradicts the party's prior deposition or other sworn testimony." *James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020) (citing *Dunn v. Menard, Inc.*, 880 F.3d 899, 910 (7th Cir. 2018)). "Where deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy." *Russell v. Acme–Evans Co.*, 51 F.3d 64, 67–68 (7th Cir. 1995). Importantly, this rule "must be applied with great care," because "summary judgment is not a tool for deciding questions of credibility" and "[f]ew honest witnesses testify at any length without at least occasional lapses of memory or needs for correction or clarification." *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 571 (7th Cir. 2015).

For this reason, "[c]ourts consistently do not find affidavits contradictory where a lapse of memory during the deposition causes the supposed 'contradiction.'" *Dent-A-Med, Inc. v. Lifetime Smiles, P.C.*, No. 04 C 4780, 2006 WL 3147694, at *2 (N.D. Ill. Nov. 1, 2006); *see also Noone v. Presence Hosps. PRV*, 149 F. Supp. 3d 904, 911 (N.D. Ill. 2015) ("[Plaintiff] testified that she could not remember if she and [her supervisor] had discussed her need for FMLA leave, while the affidavit recounts the details of just such a conversation. Because the deposition indicates nothing more than 'a lapse of memory,' the court will consider the affidavit." (citation omitted)). That is the case here. Roy states in her affidavit that she was "nervous and stressed" during her deposition and has since remembered additional details about the incident. Doc. 25-1 ¶¶ 2, 7–9. Her deposition testimony supports this assertion, because she testified multiple times that she could not recall precisely what happened when the roll fell on her foot. *See* Doc. 20-2 at

68:1–69:16.  Whether this excuse is disingenuous, as Menards claims, is a question better left for a jury.

## II. Factual Background[1]

Menards operates a retail store in Homewood, Illinois that sells, among other things, rugs and rolls of vinyl flooring.  The store displays the rugs and vinyl rolls upright in bays, with a metal guard at the top of the bay to keep the rolls from falling forward on guests.  The guard is not there to keep the bottom of the rolls in the bay.  The bays typically are "pretty full," and can each fit approximately "40, 50, or more rolls."  Doc. 20 ¶¶ 38, 42.  Each roll generally includes a price tag, but the price tag may not always be visible to customers depending upon the orientation of the roll.  If the price tag is on the side of the roll facing into the bay, a customer may need to look behind the roll to determine the price.  Menards employees typically turn the rolls to "'face' the department at the end of the day," but "they do not do formal inspections." *Id.* ¶ 50.

On February 11, 2022, Roy went to the Homewood Menards store with her companion, Abraham Carmichel.  In the store, Roy left Carmicheal to look at the rugs and vinyl rolls.  She ultimately found a vinyl roll that she was interested in purchasing, but she could not see a price tag on it.  While there were two Menards employees behind her at the time, she did not ask for their assistance and instead tried on her own to twist the vinyl roll to see the price.  The rug then "ended up on the top of [her] foot," causing her to scream for help.  *Id.* ¶ 16.  Roy testified that the roll was "standing straight in the air" and "standing directly tall, like no leaning" when it was on her foot.  *Id.* ¶ 19.  A Menards employee arrived to assist Roy but found that the vinyl roll was too heavy to move off Roy's foot.  The vinyl roll eventually "came off [Roy's] foot," but

---

[1] The Court derives the facts in this section from the SUF and PSAF, viewing them in the light most favorable to Roy, the non-movant.

Roy testified that she did not know how this happened. *Id.* ¶ 22. Roy then went to the front of the store to report the incident, and Carmicheal took the following photos of the vinyl roll that caused Roy's injury:



Doc. 20-10; Doc. 20-2 at 84:20–85:9 (Roy testifying that the rug circled in red fell on her foot).

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above

5

to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P.
56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627
(7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving
party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719
F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue
of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th
Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by
admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of
Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

## ANALYSIS

To succeed on her negligence claim, Roy must establish that (1) Menards owed her a
duty, (2) Menards breached that duty, and (3) Menards' breach proximately caused her injury.
*Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12. Because the first element is dispositive in this
case, the Court focuses its analysis on whether Roy has established that Menards owed her a
duty. *See id.* ¶ 13 ("In the absence of a showing from which the court could infer the existence
of a duty, no recovery by the plaintiff is possible as a matter of law and summary judgment in
favor of the defendant is proper." (citation omitted)).

Whether a duty exists is a question of law. *Id.* In determining whether a duty exists,
Illinois courts typically consider the following four factors: "(1) the reasonable foreseeability of
the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against
the injury, and (4) the consequences of placing that burden on the defendant." *Id.* ¶ 14. Menards
argues that these factors weigh against the imposition of a duty, largely because the vinyl rolls
constituted an open and obvious danger that a reasonable person would have appreciated and

avoided. In Illinois, "the open and obvious doctrine can provide a shortcut to analyzing the first two elements." *Keedi v. Menard, Inc.*, No. 3:20-CV-50375, 2021 WL 5759272, at *2 (N.D. Ill. Dec. 3, 2021). "Where the condition is open and obvious, the foreseeability of harm and the likelihood of injury will be slight, thus weighing against the imposition of a duty." *Bruns*, 2014 IL 116998, ¶ 19. Notably, "there are no published premises liability cases in Illinois which have 'held both (1) that the open-and-obvious rule applied without exception and (2) that the defendant nonetheless owed the plaintiff a duty.'" *Hawkins v. Menard Inc.*, No. 23-CV-1363, 2025 WL 898310, at *7 (C.D. Ill. Mar. 24, 2025) (citation omitted).

## I. Open and Obvious Condition

Under the open and obvious doctrine, "a party who owns or controls land is not required to foresee and protect against an injury if the potentially dangerous condition is open and obvious." *Rexroad v. City of Springfield*, 207 Ill. 2d 33, 44 (2003). In these cases, "the law generally assumes that persons who encounter these conditions will take care to avoid any danger inherent in such condition." *Dunn*, 880 F.3d at 906 (quoting *Bucheleres v. Chi. Park Dist.*, 171 Ill.2d 435, 448 (1996)).

Although it is often a question of fact whether a condition is open and obvious, "where no dispute exists as to the physical nature of the condition, whether the dangerous condition is open and obvious is a question of law." *Bruns*, 2014 IL 116998, ¶ 18. That is the case here. The parties agree that each of the vinyl rolls is 12 feet tall and weighs approximately 100 pounds. Menards stores these rolls upright and leaning against each other in bays, with each bay holding "40, 50, or more rolls." Doc. 20 ¶ 38. The bays typically are "pretty full." *Id.* ¶ 42. The bottom of each bay is made of plywood, which creates a "small lip from the regular floor about two inches high." *Id.* ¶ 36. While there is a metal guard at the top of the bays to keep the rolls from

7

falling forward, this guard does not prevent the bottom of the rolls from falling or sliding off the plywood.

Because no dispute exists as to the physical nature of the condition in this case, the Court can properly analyze whether this condition was open and obvious as a matter of law. "The determination of whether a condition is open and obvious is an objective test rather than a subjective test," which turns on "whether a reasonable person would recognize both the condition *and the risk* involved." *Wilfong v. L.J. Dodd Constr.*, 401 Ill. App. 3d 1044, 1052–53 (2010). But that does not mean that a plaintiff's subjective knowledge is irrelevant. While "the operative focus is not on plaintiff" herself, courts ask whether a reasonable person "with plaintiff's knowledge of the situation" would "have appreciated and avoided the hazard" while "exercising ordinary perception, intelligence, and judgment." *Dunn*, 880 F.3d at 907 (citation omitted). Thus, the question the Court must answer is whether a reasonable person with Roy's knowledge of the situation would recognize that moving the roll to check the price tag could feasibly result in injury.

The Court agrees with Menards that a reasonable person with Roy's knowledge would appreciate that the rolls presented an open and obvious danger. It is undisputed that the only guard on the bay was at the top, meaning that it did not prevent the bottoms of the rolls in the bay from moving. Indeed, Roy testified that, at the time of the incident, she had observed that the rolls were "all leaning" against each other and knew that there nothing preventing the bottom of the rolls from falling off the plywood. Doc. 20-2 at 77:4–13 ("[T]here was nothing that was blocking anything, from allowing anything to move forward. As tall as [] those rugs were, there was nothing blocking it to stop it from coming at me."). She also knew that the vinyl roll she was interested in "was very close to the front edge of the display base." Doc. 25-1 ¶ 5. A

8

reasonable person with this knowledge would appreciate the risk of moving or touching the roll to check the price tag; namely, that doing so could feasibly cause the bottom to fall off the plywood onto their foot. *See Dunn*, 880 F.3d at 907 ("It is undisputed that '[p]rior to the incident, Plaintiff noticed that one stack of insulation did not look stable . . . a reasonable person would have taken sufficient care to avoid the primary danger inherent in the stack's condition: that the stack might fall over."); *Rivas v. Westfield Homes of Ill., Inc.*, 295 Ill. App. 3d 304, 309 (1998) ("[T]he stack of drywall was an open and obvious danger . . . the drywall panels were significant in size (4 feet by 12 feet) and were leaning against a wall. We believe that a person exercising ordinary perception, intelligence, and judgment would have known of the possibility of the stack tipping and falling if moved.").

Roy's arguments to the contrary are unpersuasive. Roy argues simply that "[n]othing about the rolls suggests that if you move one to see a price the bottom part of the roll will come out of the bay and down on your foot" because the rolls were "just sitting in the bay, nothing [was] moving, and nothing [was] stacked on top of anything else." Doc. 24 at 9. But the evidence in the record, including the significant weight of the rolls, their placement near the edge of the bays, and Roy's own testimony about her observation that "there was nothing blocking [the rolls] from coming at [her]," Doc. 20-2 at 77:4–13, contradicts this argument. Further, this argument is perfunctory and underdeveloped because Roy does not provide any legal authority or explanation to support the proposition that the danger was not open or obvious merely because the rolls were not stacked on top of anything else and not moving before she touched them. The Court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011); *Elst*, 579

9

F.3d at 747 ("Perfunctory and undeveloped arguments as well as arguments unsupported by pertinent authority are waived.").

Having determined that a reasonable person with Roy's knowledge would appreciate that the rugs and vinyl rolls presented an open and obvious danger, the Court must now determine whether one of the exceptions to the open and obvious rule applies. As relevant here, Illinois law recognizes an exception to the open and obvious rule "where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." *Sollami v. Eaton*, 201 Ill. 2d 1, 15 (2002) (quoting Restatement (Second) of Torts § 343A(1) cmt. f).[2] This exception only applies where the distraction was reasonably foreseeable by the defendant and evidence exists from which a court can infer that the plaintiff was actually distracted. *Bruns*, 2014 IL 116998, ¶¶ 19, 22.

Roy argues that the distraction exception applies in this case because customers would become distracted not only by the need to look through "40, 50 or more rolls . . . to find what they want," but also because they would need to "move the roll(s) to search for a price." Doc. 24 at 11. She also argues that "the display itself" would be distracting because it was "jammed with rolls; some of which have the bottom of the roll hanging over the edge of the base of the bay." *Id.* at 10. This argument is not persuasive, because Illinois courts are clear that "[d]istraction exception cases generally involve situations in which the injured party is distracted from the open and obvious condition because circumstances required that she focus her attention on *some*

---

[2] There is also a "deliberate encounter exception" to the open and obvious doctrine, which applies "where the possessor of land has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." *Burns v. Sherwin-Williams Co.*, 78 F.4th 364, 371 (7th Cir. 2023) (citations omitted). Roy does not argue that this exception applies, and neither party addressed this exception in briefing or during oral argument. The Court therefore focuses its analysis solely on the distraction exception.

other condition or hazard." *True v. Greenwood Manor W., Inc.*, 316 Ill. App. 3d 676, 676 (2000) (emphasis added). As Menards pointed out during oral argument, Roy does not argue or present evidence to show that some other condition or hazard distracted her from the rolls. To the contrary, Roy admitted during her deposition that her sole focus at the time was the rugs and vinyl rolls display. Doc. 20-2 at 71:4–12 (Roy testifying that she "was looking for a rug, and that was the only thing [she] was trying to do at that moment"). And Roy does not provide any authority to support the proposition that the distraction exception may apply in situations where the distraction was the open and obvious condition in and of itself.

Seemingly recognizing this issue, Roy argued during oral argument that only the lower portion of the vinyl rolls formed the open and obvious danger. The middle and upper portions of the rolls, she contended, constituted a separate condition that distracted her. But Roy has not provided any authority that would support drawing such an arbitrary and hairline distinction. And at least one court has expressly rejected such an argument. In *Rohrbach v. AMS Hydro Excavation, LLC*, No. 09 C 50165, 2011 WL 13550633 (N.D. Ill. Nov. 30, 2011), the plaintiff was a field technician who fell into a hole on a jobsite, injuring himself, *id.* at *1. Shortly before his injury, he had been working on terminating a gas line in a second hole, located about one to two feet away from the hole he fell into. *Id.* at *1, 3. At summary judgment, he argued that the distraction exception applied because his work in the second hole distracted him from the danger of the first hole. *Id.* at *3. The court disagreed, concluding that the distraction exception did not apply in part because "the plaintiff's attention . . . was not distracted by a separate or distinct hazardous condition as the holes in this case were two parts of the same undertaking." *Id.* at *4. The same is true here; the bottom, middle, and top portions of the vinyl rolls were all part of the same undertaking.

Even if the middle and top of the rolls were some other condition or hazard, however, Roy still has not presented evidence sufficient to create an issue of material fact with respect to actual distraction. Roy argues that her "own testimony shows that [she] was actually distracted" because she was "looking for a price at the time of her injury." Doc. 24 at 10. But not only does she provide no authority to support this argument, she ignores that Illinois courts consistently hold that the "mere fact of looking elsewhere does not constitute a distraction." *Bruns*, 2014 IL 116998, ¶ 22. Rather, the distraction exception applies where the distraction caused plaintiff to "forget about the danger" or "fail to protect [herself] from the danger." *Kleiber v. Freeport Farm & Fleet, Inc.*, 406 Ill. App. 3d 249, 256–57 (2010); *see also Keedi v. Menard, Inc.*, No. 3:20-CV-50375, 2021 WL 5759272 (N.D. Ill. Dec. 3, 2021) ("[T]he distraction exception applies when customers see the hazard but then later forget about it because of the distraction."). Here, no evidence exists that looking at the price tags caused Roy to forget about the dangerous condition or otherwise prevented her from protecting herself against that danger. To the contrary, Roy testified during her deposition that "everything happened so fast" after she began looking for a price tag on the back of the vinyl roll. Doc. 20-2 at 68:19; *see also id.* at 68:5–9 ("I just went to try and look to see if there was a price on it . . . so for it to end up on me that fast— how it got on me, I don't know."). The vinyl roll fell on her foot almost immediately once she started looking for a price tag, meaning that there was simply no time for her to forget about the dangerous condition. *See Hawkins*, 2025 WL 898310, at *6 (finding that distraction exception did not apply in part because, plaintiff "was aware of the [dangerous condition] between herself and the merchandise seconds before she tripped"); *Rosenberg v. Home Depot U.S.A., Inc.*, No. 16-CV-5272, 2019 WL 670262, at *7 (N.D. Ill. Feb. 19, 2019) (stating that nothing in the record suggests that plaintiff was distracted because he "*simultaneously* saw the item that he was

12

searching for and noticed the forks between him and the item.  He then attempted to step over the forks, tripped, and fell."); *Kleiber*, 406 Ill. App. 3d at 259 (finding that the distraction exception did not apply in part because "plaintiff's testimony in the instant case also established that there was little to no delay between the time that plaintiff recognized the danger and the time when she was injured," and she therefore "had no time to forget about the danger").

Given the above, the Court concludes that the open and obvious doctrine applies to this case.

## II.     Existence of Duty Despite Open and Obvious Condition

Having found that the display of rugs and vinyl rolls constituted an open and obvious danger, the Court must determine whether Menards nonetheless owed Roy a duty to warn or protect.  "The existence of an open and obvious danger is not an automatic or *per se* bar to the finding of a legal duty on the part of a defendant." *Bruns*, 2014 IL 116998, ¶ 19.  Instead, the existence of an open and obvious danger "renders the first two factors in the legal duty inquiry slight and weighs against the imposition of such a duty." *Id.*  The Court must therefore determine whether the "third and fourth factors—the burden that defendant would incur, and the consequences of imposing that burden—favor plaintiff to the extent that they outweigh the first two factors and thus call for imposing a duty." *Rosenberg*, 2019 WL 670262, at *7.

Roy argues that the magnitude of the burden on Menards of guarding against the injury is slight because "[a] simple task or two would just have to be added to the current employees' daily duties." Doc. 24 at 9.  First, Roy argues that these employees would merely need to do "a regular inspection of these rolls of carpeting and vinyl to make sure that the pricing is easy to see . . . and make sure that the bottom of the rolls are not hanging over the edge of the bays." *Id.* But Roy admits that these employees "already perform" this task once per day, *id.*, and requiring

them to continuously monitor the condition of the rugs and vinyl rolls throughout the day would be disproportionately burdensome. Indeed, "Illinois courts, including [the Seventh Circuit] sitting in diversity, have repeatedly rejected imposing the duty of continuously monitoring safety conditions in premises liability cases." *Burns v. Sherwin-Williams Co.*, No. 19-CV-5258, 2022 WL 4329417, at *13 (N.D. Ill. Sept. 18, 2022) (collecting cases), *aff'd*, 78 F.4th 364 (7th Cir. 2023); *see also Kleiber*, 406 Ill. App. 3d at 260 ("To impose such a duty would require defendant to not only have an employee stationed outside but to specifically monitor the pallets in question and to immediately remove any pallet that started to run low or became empty to avoid the risk that a person might try to cross a low or empty pallet. We believe that imposing such a burden would be unreasonable.").

Additionally, Roy argues that a "simple sign that tells the customer not to touch the rolls, but rather to seek out a Menards employee to help them" would guard against the injury. *Id.* Although the Court agrees that this solution would impose only a slight burden on Menards, it would be ineffective in guarding against the danger because "[s]uch signs would merely identify the open and obvious danger." *Tillman v. United States*, No. 04 C 6674, 2006 WL 2224061, at *10 (N.D. Ill. Aug. 2, 2006) ("Measures that would impose only a slight burden on defendant, such as posting signs or painting curbs, would be ineffective in guarding against the injury."); *Godair v. Metro E. Sanitary Dist.*, 2021 IL App (5th) 200160, ¶ 43 ("While we acknowledge that act of placing signs alone may not be too great a burden . . . signs will be ineffective in situations such as this where the plaintiff was aware of the dangers of the ditch."). The ineffectiveness of this measure is especially apparent under the circumstances of this case, where Roy recognized that nothing prevented the rolls from falling on her foot yet still did not request assistance from the two Menards employees standing behind her. Doc. 20 ¶ 15; Doc. 20-2 at 77:4–13.

14

For these reasons, the burden of guarding against the injury and the consequences of that burden on Menards do not favor Roy "to the extent that they outweigh the first two factors and thus call for imposing a duty." *Rosenberg*, 2019 WL 670262, at *7. The Court therefore finds that Menards did not owe Roy a duty to warn or protect and grants summary judgment to Menards. *See Bruns*, 2014 IL 116998, ¶ 13 ("In the absence of a showing from which the court could infer the existence of a duty, no recovery by the plaintiff is possible as a matter of law and summary judgment in favor of the defendant is proper." (citation omitted)).[3]

## CONCLUSION

For the foregoing reasons, the Court grants Menards' motion for summary judgment [19]. The Court enters judgment for Menards on Roy's complaint and terminates this case.

Dated: March 6, 2026

SARA L. ELLIS
United States District Judge

---

[3] Because the duty element resolves the case, the Court does not address the remainder of the parties' arguments at this time.

15